## Joseph Smith *vs.* John Hurd & others.

A stockholder in a bank cannot maintain an action against its directors for their negligence in so conducting its affairs that its whole capital is wasted and lost, and the shares therein rendered worthless; nor for the malfeasance of its directors in delegating the whole control of its affairs to the president and cashier, who waste and lose the whole capital.

This was a special action on the case, by a stockholder of the Phœnix Bank, against those who were directors of the said bank, for several years next before and at the time of the failure of said bank, in October 1842. There were two counts; one founded in nonfeasance of official duty, the other in misfeasance.

The *first* count recited, as matter of inducement, that stockholders in banks are bound by law to elect a certain number of directors, who have by law the entire control and management of the business and property of the corporation, with power to appoint or elect a president and cashier, and such other subordinate officers and agents as they may think proper, for

the purpose of conducting the business of the bank, in such manner as the directors may order ; that it is the duty of the directors to order, direct and superintend the acts and proceedings of the officers, and cause them to account, from time to time, for the property which may come to their hands, and to exercise reasonable vigilance, in seeing that the money and other property of the bank are not lost, wasted or misused ; and to make and authorize loans by discount upon banking principles, and to hold regular meetings for that purpose, and to exercise their own skill and discretion about loans and securities, with a view to the preservation of the capital and profit of the stockholders, and to cause true records to be kept, and proper books of account, and to examine them personally, with the vouchers, and ascertain the profits of the business, before declaring dividends, and see that the returns made to the secretary of the Commonwealth, as required by law, exhibit truly the condition of the bank, and that true statements and exhibits are made to the bank commissioners, at their examinations of the bank, and to the stockholders at their meetings ; to keep the issues of the bank and its aggregate of debts, and the amount of loans to the directors, within the limits by law prescribed, and to see that the moneys of the bank are not lent to irresponsible persons, and upon inadequate security, or upon securities not conforming to bank usage, nor capable of being discounted, or otherwise irregular; and that it is the duty of each individual, who accepts the office of director, to exercise, concurrently with his associates, unless prevented by inevitable accident, a reasonable degree of diligence and fidelity, in performing the common duties of the board ; and that, if the capital is lost by the official mismanagement of the directors, the stockholders are by law made answerable for it, and that, when the charter is annulled or expires, they are liable also for the redemption of all outstanding bills.

The said count further recited the incorporation of the Phœnix Bank, with a capital of three hundred thousand dollars, the acceptance of the charter, the organization of the

corporation, and the actual transaction of banking business, upon said capital duly paid in; that the plaintiff was an original subscriber for ten shares in the corporate stock, and paid in the amount of said shares, November 1st 1832; that four of the defendants were members of the first board of directors, and were reëlected from year to year; that the business was, for many years, faithfully and prosperously conducted under their direction; and that the plaintiff, confiding in their fidelity and diligence, was induced, in October 1836, to buy ninety shares more of the stock; that the stockholders continued to reëlect, annually, the four defendants above referred to, and for the last five years had elected, jointly with them, the other defendants and William Wyman, to be the directors of the bank; that the directors had annually elected William Wyman to be president, and Thomas Brown, jr. to be cashier, each with a large salary; that all the defendants had constantly accepted their respective offices, and had thereby undertaken, with all and each of the stockholders, to discharge the duties thereof, with due skill, prudence, diligence and fidelity; that the plaintiff, confiding in their undertakings, and the returns made and authorized by them to the secretary of the Commonwealth, and the reports of the bank commissioners, upon the exhibits made to them, and the dividends of profits regularly made, and the representations to the stockholders at their meetings, was induced to continue a stockholder, and not to sell his shares, relying upon them as a safe investment; that, until after January 1st 1837, the capital of the bank was in fact well invested in suitable banking securities; and that the property of said bank, after paying debts and liabilities, was worth more than the whole amount of said capital, and would have so continued if the business had been conducted with due skill, prudence, diligence and fidelity, by the defendants.

The said count then alleged that, for a long space of time, the defendants, "not regarding their aforesaid duties, as such directors, nor their respective and concurrent promises in that behalf, but wholly disregarding the same, and

contriving together to injure and deceive the plaintiff therein, neglected and omitted, without any reasonable excuse, during the said term of years, to give reasonable and proper personal attention to the business of the said bank, and the care and management of its property and concerns, and to exercise a reasonable care and diligence in ordering and directing the said president and cashier, so elected and appointed, from time to time, in manner aforesaid, concerning the business of the said bank, and the manner of conducting the same, in their respective departments."

And the said count proceeded to allege, particularly, such entire neglect of each and every duty set forth in the recital, and particular instances thereof, and among them, that they " wholly neglected and omitted, without any reasonable excuse, to exercise their own skill, care, judgment and discretion, in the making of loans and discounts, out of the moneys in the possession of said bank, and otherwise administering and directing the negotiations and business of the said bank, and, on the contrary thereof, negligently permitted the said president to control and manage the whole business of the said bank as he saw fit, and to issue the bills and lend the moneys of the said bank according to his own will and pleasure, and to lend, out of said moneys, divers large sums to divers persons, amounting, in the whole, at the time of the failure of the bank, hereinafter spoken of, to a sum greatly exceeding the whole capital of said bank, to wit, the sum of five hundred thousand dollars, taking and receiving, as security therefor, unaccepted and unauthorized drafts, notes on demand, memorandum checks, and other informal promises, and pretended securities, not usual in bank dealing, nor capable of discount, nor well approved as banking securities, according to the usage of all well regulated banks in this Commonwealth, nor deemed nor decided by the board of directors to be safe and expedient securities for the said bank to take and hold, or well adapted to preserve the capital stock thereof, and secure a reasonable profit on the said loans, for the benefit of the stockholders ; which said drafts, notes,

checks and other securities were, and are, wholly valueless and unpaid."

The said count then set forth the particulars of such loans to Stanley, Reed & Company, and to other individuals named, and of sums taken by the president himself, for his own use, and of loans to individual directors, exceeding the limits of the law, and issues of bills beyond such limits, and other improper acts alleged as done by the said president, through the negligent permission of the defendants.

The said count then averred, that by reason of all the aforesaid negligences and omissions, and the said acts of the president and cashier, so negligently permitted, the bank suddenly failed, on the 3d of October 1842, and became unable to redeem its bills and pay its debts; that its capital was wholly lost, and that the plaintiff's shares therein became valueless, and that he was made liable, in a large amount, for his proportion of the capital, lost by the official mismanagement of the directors, and further liable, at the expiration of the charter, to pay large sums for the redemption of the bills of said bank, and liable to be harassed by suits of the bill holders and other creditors of the bank, and to be put to heavy expenses and great losses thereby.

The *second* count, after setting forth nearly the same matters of inducement which are set forth in the first count, alleged that the defendants, for three years next before the commencement of this action, "not regarding their aforesaid duties as such directors, nor their respective promises in that behalf, but wholly disregarding the same, and contriving together to injure and deceive the plaintiff therein, concurred and agreed with each other, annually, during the said term, in appointing the said William Wyman to be the president of said bank, and jointly with the said Wyman, appointed the said Thomas Brown, jr. to be the cashier thereof; and further concurred and agreed with each other, and with the said Wyman, that the whole business of the said bank should be managed and conducted by him, as president and general agent of the said bank, and of the directors thereof, in such manner as he should

see fit; and that the said cashier should be wholly under the orders and directions of the said Wyman, and should execute the duties of his said office in such manner as the said Wyman should from time to time require and direct; and that they, the said directors, would permit, sanction, ratify and confirm such discounts, loans, issues, transactions and negotiations in the business of said bank, as the said Wyman should from time to time make, authorize and transact, and would pay him a large sum of money, to wit, three thousand dollars, annually, out of the moneys of said bank, as a compensation for his services in attending to and transacting the business thereof in manner aforesaid; and the said directors, in pursuance of their said agreement, intrusted to the said Wyman the entire management and control of the business of said bank, during the said term, and permitted, sanctioned, ratified and confirmed the discounts, loans, issues and other transactions and negotiations by him made, authorized and transacted in his said agency during the said term, and paid him for his services therein the said annual sum of three thousand dollars out of the moneys of said bank:" And that the said defendants themselves declared and made dividends, when there were no profits, and caused false returns to be made, to the secretary of the Commonwealth, of the state and condition of the bank, and by their agent, the said Wyman, and the cashier under his direction, made false exhibits and statements to the bank commissioners; by all which means the plaintiff was misled, and induced to rely on the security of his investment: And that the directors, through said Wyman, to whom they had unlawfully delegated their whole authority, made the same loans, and did the same unlawful and irregular acts, (setting forth the same particularly,) which in the first count are charged as done by said Wyman, through their negligent permission: And generally, the said second count charged, as acts of the defendants, the matters which in the first count, were charged as negligences and permissions; and deduced therefrom, in like manner, the failure of the bank, and the special damage to the plaintiff.

This count concluded with an averment, that the defendants, by "misconducting the business of said bank, as aforesaid, so wilfully, deceitfully and fraudulently mismanaged the business and property of the said bank, that the whole capital thereof was utterly lost and wasted."

The defendants demurred to the declaration, and the plaintiff joined in demurrer.

*B. R. Curtis*, in support of the demurrer. The duties of the defendants, which the declaration alleges to have arisen from an implied promise, on their accepting the office of directors, arose from such a promise to the corporation, and not to the several stockholders. Directors are agents, and the corporation is their principal. They are appointed by the corporation, that is, at a meeting of the stockholders — the corporation in its elective capacity. The written appointment of directors, by every stockholder, would not make them legal directors. Their whole power is derived from the corporation; and all the business done by them is that of the corporation, and not of the stockholders. See *Angell & Ames on Corp.* (3d ed.) 76, 204. *Stedman v. Eveleth*, 6 Met. 121. If the promise of directors were made to the individual stockholders, who could sue for a breach of it, after a transfer of shares? Does the promise run with the stock, as covenants real run with the land?

As the corporation may have a single action for the whole injury alleged to have been done by the defendants, there is no reason why each stockholder should have an action; and as no stockholder can have suffered any special damage, that is, any damage not also suffered by the others, the analogies of the law would seem to confine the remedy to a single action by a party that can recover for the whole injury. Co. Lit. 56 *a*. 2 Lil. Ab. 245. 19 Pick. 155 – 162.

It is clear that the corporation might maintain an action on the facts alleged in this declaration. *Franklin Fire Ins. Co. v. Jenkins*, 3 Wend. 130. And it has been decided that a member of a corporation cannot call its agents to account, by a bill in equity, without the consent of the corporation

legally obtained, unless the corporation is incapable of obtaining redress, or collusively refuses to seek it; nor then, without making the corporation a party defendant. *Hersey* v. *Veazie,* 11 Shepley, 1. See also *Forbes* v. *Whitlock,* 3 Edw. Ch. 446. *Robinson* v. *Smith,* 3 Paige, 222. *Cunningham* v. *Pell,* 5 Paige, 607.

It is a strong argument, though not conclusive, against the maintenance of this action, that it is without precedent. The only known attempt of a corporator to recover of the officers of a corporation, for an injury to the corporate property, is that of *Hodsdon* v. *Copeland,* 4 Shepley 314; and there the attempt failed.

The charge in the first count is, that the defendants permitted the president to embezzle the corporate property. The case of *Hodsdon* v. *Copeland* shows that the plaintiff could not sue the president for the embezzlement itself; and it seems to follow that he cannot maintain his action against the defendants for permitting the embezzlement.

If the plaintiff relies on the charge, in both counts in the declaration, of the defendants' " contriving together to injure and deceive " him, the answer is, that these words are surplusage. If the other allegations will not support the action these words will not. In an action on the case, such words need not be proved. 1 Saund. 230, *note* (4.) Even in the action of assumpsit, the English precedents allege, when the suit is against more than one, that they contrived to injure the plaintiff.

The plaintiff's allegation, in his first count, that he failed to sell his stock, by reason of being deceived by the defendants' returns to the legislature, shows no ground of action; for it is merely an averment that he had not an opportunity to sell to some one who was equally ignorant of the facts. Nor does the allegation, that the value of his shares was destroyed, show a cause of action; for it is, in other words, an averment that the property of the corporation was destroyed. Besides; all the acts and omissions, which are charged in the declaration, are several, and the defendants are not properly joined in the suit.

The second count charges a transfer to the president and cashier of all the powers of the directors, and that they, as agents of the defendants, did the injurious acts. But no one can delegate authority to another to do an unlawful act. Story on Agency, § 11. And the allegation is not that the defendants fraudulently transferred their powers, for the purpose of cheating the stockholders. Without this allegation, no cause of action is shown. *Bank of Rome* v. *Mott*, 17 Wend. 554.

It is alleged that the defendants sanctioned and ratified the acts of the president, but not that they ratified any known illegal acts. There is no averment of the defendants' guilty knowledge. The averments amount only to this, namely, that the defendants were guilty of negligence ; and this is no more than is alleged in the first count.

There is, however, one allegation, in this count, of fraudulent conduct, viz. " so wilfully, deceitfully and fraudulently mismanaged," &c. But the use of the word " fraudulently " does not charge legal fraud, if the facts alleged do not amount to fraud. *Commonwealth* v. *Hunt*, 4 Met. 111. *Munday* v. *Knight*, 3 Hare, 497. *Bank of Rome* v. *Mott*, 17 Wend. 556, 557. There is no basis for the charge of fraud, except that of negligence. And even gross negligence may be entirely consistent with good faith and honesty of intention. Story on Bailm. § 22.

*Gardiner*, (*Greenleaf* was with him,) for the plaintiff. The plaintiff has no remedy against the corporation, whose funds are all gone ; and if it had funds, it would not be liable to its stockholders for injuries received from its officers appointed by the stockholders themselves. *Foster* v. *Essex Bank*, 17 Mass. 479. There is no equity remedy in this case of mere fraud and damage. 1 Story on Eq. § 72. 2 ib. §§ 794, 796. 2 Bl. Com. 432. *Law* v. *Thorndike*, 20 Pick. 317. The Rev. Sts. *c.* 44, § 22, do not give the plaintiff a remedy by bill in equity, as this is not a case of " debt " or " money due," within the meaning of that section.

It is no objection to the maintenance of this action, that

there is no precedent for it. Torts are infinitely various, and when a new one is disclosed, it is to be redressed by the application of old principles. Willes, 581, *note (a.)* Jones on Bailm. 57, 58. 3 T. R. 63, per Ashhurst, J. *Taylor v. Ashton,* 11 Mees. & Welsb. 401. Com. Dig. Action upon the Case, A.

1. The damage is special to the plaintiff. 2. The torts committed by the defendants are actionable. 3. The relations of the parties are such as entitle the plaintiff to sue the defendants in tort, for breach of official duty. 4. The defendants are jointly and severally liable.

1. Shares are the stockholders' individual property. They are transmissible and devisable, and the owners incur liabilities. See Rev. Sts. *c.* 36, §§ 30, 31, 49. 10 Pick. 415, 454. 6 Pick. 324. 2 Pick. 243. The plaintiff's legal property in his shares is wholly gone by the destruction of the corporate fund, and he is exposed to the claims of bill holders.

2. The duties of bank directors are plain ; and they have, in this instance, been violated by the defendants. See *Spear v. Ladd,* and *Northampton Bank v. Pepoon,* 11 Mass. 96, 288. *Burrill v. Nahant Bank,* 2 Met. 163. *Minor v. Mechanics' Bank,* 1 Pet. 70, 71. *Bank of U. States v. Dunn,* 6 Pet. 59. *Bank of the Metropolis v. Jones,* 8 Pet. 16. *Bank Commissioners v. Bank of Buffalo,* 6 Paige, 505. *Wyman v. Hallowell & Augusta Bank,* 14 Mass. 63. It is the liability of the defendants, and not the forum in which they are liable, that is now to be inquired into. Generally, the courts of equity have been resorted to. *Charitable Corporation v. Sutton,* 2 Atk. 401. *Scott v. Depeyster,* 1 Edw. Ch. 513, 542. *Robinson v. Smith,* 3 Paige, 233. *Percy v. Millaudon,* 20 Martin, 68, and 3 Louisia. 568. But it has been shown that the plaintiff has no remedy in this Commonwealth, by bill in equity. In *Franklin Fire Ins. Co. v. Jenkins,* 3 Wend. 130, cited for the defendants, the suit was at law. See also *Hinsdale v. Larned,* 16 Mass. 69. *Hartridge v. Rockwell,* R. M. Charlt. 265.

It is objected that if any action will lie, it is only by the

corporation.  If so, the stockholders have no remedy, unless the corporation shall choose to sue.  And the .directors, having charge of the whole concerns of the bank, may prevent the bringing of a suit.  Besides; a successful suit by the corporation would be no remedy for the plaintiff.  The sum recovered would go to the corporation, and not to the stockholders.

3.  In cases of *private* agency or trust, the agent or trustee is liable to the principal or *cestui que trust.*  In all cases of bailment or trust, an implied promise arises to the party in interest.  See *Verplanck* v. *Mercantile Ins. Co.* 1 Edw. Ch. 84.  ' Bac. Ab. Actions on the Case, B.  *Arnold* v. *Lyman,* 17 Mass. 400.  *M'Kinster* v. *Bank of Utica,* 9 Wend. 46, and 11 Wend. 473.  Story on Agency, §§ 14, 16, 210, 217 *a.* Substituted trustees are answerable to the *cestui que trust. Myler* v. *Fitzpatrick,* Mad. & Geld. 360.  *Pollard* v. *Downes,* 1 Eq. Cas. Ab. 6.

If directors voluntarily give authority to a president and cashier to do the directors' duty, they are liable to the stockholders for the misconduct of those whom they thus authorize.  Story on Agency, §§ 13, 217, 219, 314.  *Catlin* v. *Bell,* 4 Campb. 183.  *Schmaling* v. *Thomlinson,* 6 Taunt. 147. *Denison* v. *Seymour,* 9 Wend. 8, 15.  Story on Bailm. §§ 172, 174, 182 *a.* 184.  *Doorman* v. *Jenkins,* 2 Adolph. & Ellis, 256.  *Tracy* v. *Wood,* 3 Mason, 132.

So *public* and *quasi* public agents, or officers, are liable for wrongs done to individuals in the discharge of their official functions.  Story on Agency, §§ 319 *b.* 320 – 322.  *Miller* v. *Seare,* 2 W. Bl. 1141.  *Schinotti* v. *Bumsted,* 6 T. R. 646. *Bartlett* v. *Crozier,* 15 Johns. 250.  The rule as to persons employed by public officers is the same as in case of persons appointed by private agents.  Story on Agency, §§ 318 – 321. *Dunlop* v. *Monroe,* 7 Cranch, 269.  *Jones* v. *Bird,* 1 Dowl. & Ryl. 497, and 5 Barn. & Ald. 837.

4.  On the second count, if not on the first, the defendants are jointly liable.  *Smith* v. *Rines,* 2 Sumner, 338.  And on the first count, for negligence, if it be shown, on a trial, that

all the defendants were concurrently guilty of negligence, and that they all wholly neglected to supervise the proceedings, then the joint neglect of all would be shown, and their joint liability. The case of *The King* v. *Hollond*, 5 T. R. 607, shows that each of the defendants is liable; and it appears from *Ferguson* v. *Earl of Kinnoull*, 9 Clark & Fin. 251, that they are jointly liable. See also *Attorney General* v. *Wilson*, 1 Craig & Phil. 25. *Charitable Corporation* v. *Sutton*, 2 Atk. 406.

*B. Rand*, in reply. It does not follow, from the fact that the plaintiff has no remedy under our equity system, that he therefore has a remedy by this action at law.

The declaration does not state any special promise by the defendants, but only a general, implied promise, arising from the defendants' duties as directors. But there are no general duties of directors prescribed by law; the by-laws of each bank prescribe their duties, from time to time. No usage of banks can affect the present question; for there is no binding usage, and there cannot be any. Every bank is to make its own by-laws. Rev. Sts. c. 44, § 1. Therefore the allegation in the declaration cannot be sustained, for it has no legal foundation.

The court must intend that the corporation passed some by-laws prescribing the duties of the directors; and the declaration should have alleged a promise arising from those by-laws, in order to show that the defendants are liable. The cases cited from 11 Mass. 98, 288, and 2 Met. 163, do not decide that all banks are subject to the doctrines there laid down. The cases cited from 1, 6 and 8 Pet. show the particular liabilities of directors under the several charters there brought before the court, or the by-laws of those several banks.

The case in 2 Atk. 401, was one of trust and fraud, and was dealt with as such by Lord Hardwicke, and does not bear on the present case. And the case in 11 Mees. & Welsb. 401, was for fraud by directors of a company, whereby the plaintiff was induced to become a member.

The law as to mandataries, cited from Story on Bailm. is not applicable to directors of banks, who are more like partners, and are always personally interested in the bank.

*Non constat*, that the alleged loans to the directors were since the *St.* of 1838, *c.* 196. Besides ; the declaration does not aver any loss from those loans.

A creditor cannot maintain an action against a person who deprives the debtor of his property, whereby the creditor loses his debt. *Lamb* v. *Stone,* 11 Pick. 527.

SHAW, C. J. This is certainly a case of first impression. We are not aware that any similar action has been sustained in England, or in any of the courts of this country. It is founded on no statute. It is an action on the case, at common law, brought by an individual holder of shares in an incorporated bank, against the directors, not including the president, setting forth various acts of negligence and malfeasance, through a series of years, in consequence of which, as the declaration alleges, the whole capital of the bank was wasted and lost, and the shares of the plaintiff became of no value. The circumstance that no such action has been maintained, would certainly be no decisive objection, if it could be shown to be maintainable on principle. But the fact, that similar grievances have existed to a great extent, and in numberless instances, where such an action would have presented an obvious and effective remedy, affords strong proof, that in the view of all such suffering parties, and their legal advisers and guides, there was no principle on which such an action can be maintained.

If an action can be brought by one stockholder, it may be brought by the holder of a single share ; so that for one and the same default of these directors, thirty five hundred actions might be brought. If it may be sustained by proof of an act, or series of acts, of carelessness, neglect, and breach of duty, in managing the affairs of the bank, by which the whole value of the stock is destroyed, it may, on the same principle, be maintained on any act or instance of such negligence, by which the shares are diminished in value fifty, ten, five, or

one per cent. Still, notwithstanding these consequences, if the plaintiff has a good right of action, upon recognized and sound legal principles, his action ought to be sustained.

But the court are of opinion that the action cannot be maintained; and that on several grounds, a few of the more prominent of which may be alluded to.

1. There is no legal privity, relation, or immediate connexion, between the holders of shares in a bank, in their individual capacity, on the one side, and the directors of the bank on the other. The directors are not the bailees, the factors, agents or trustees of such individual stockholders. The bank is a corporation and body politic, having a separate existence as a distinct person in law, in whom the whole stock and property of the bank are vested, and to whom all agents, debtors, officers and servants are responsible for all contracts, express or implied, made in reference to such capital, and for all torts and injuries diminishing or impairing it. The very purpose of incorporation is, to create such legal and ideal person in law, distinct from all the persons composing it, in order to avoid the extreme difficulty, and perhaps it is not too much to say the utter impracticability, of such a number of persons acting together in their individual capacities. The practical difficulty would be nearly as great, whether it were held that all must join in an action to recover damage for an injury to the common property, or that each might sue separately.

The stockholders do, indeed, ordinarily elect the directors; but it is as parts and members of the corporation, in their corporate capacity, in modes pointed out by the charter and by-laws, so that the directors are the appointees of the corporation, not of the individuals. Indeed, I believe there is a provision in the bank charters — there certainly was formerly — which is equally to the present purpose; namely, that the Commonwealth shall be at liberty to add a certain amount to the capital of various banks, and appoint a proportional number of directors. Such directors, so appointed, pursuant to the charter regulating the legal organization of the body,

would stand in all respects on the footing of directors chosen by the stockholders. If these were liable to the action of individual stockholders, those would be, in like manner.

2. The individual members of the corporation, whether they should all join, or each act severally, have no right or power to intermeddle with the property or concerns of the bank, or call any officer, agent or servant to account, or discharge them from any liability. Should all the stockholders join in a power of attorney to any one, he could not take possession of any real or personal estate, any security or chose in action; could not collect a debt, or discharge a claim, or release damage arising from any default; simply because they are not the legal owners of the property, and damage done to such property is not an injury to them. Their rights and their powers are limited and well defined. They are members of an organized body, and exercise such powers as the organization of the institution gives them. Stockholders in banks have a separate right to dividends, when declared, and to a distributive share of the capital stock, if any remains when the charter of the bank is at an end, and its debts paid.

3. But another important consideration is, that the injury done to the capital stock by wasting, impairing and diminishing its value, is not, in the first instance, nor necessarily, a damage to the stockholders. All sums which could, in any form, be recovered on that ground, would be assets of the corporation, and when collected and received by directors, receivers, or any other persons entitled to receive the same, they would be held in trust, first to redeem the bills and pay the debts of the bank; and it would be only after these debts were paid, and in case any surplus should remain, that the stockholders would be entitled to receive any thing. It is, therefore, an indirect, contingent and subordinate interest, which each stockholder has, in damages so to be recovered against directors. If, upon such indirect, contingent and remote interest, individual stockholders could recover for the defaults of directors, and especially, as is alleged in this case, where these defaults have been so great as to sink the capital,

*a fortiori* would the creditors of the bank individually have a right to maintain similar actions ; because their claim upon the funds, being prior to that of stockholders, would be somewhat more immediate and direct.

In the same connexion, it is obvious to remark, that a judgment in favor of one stockholder would be no bar to an action by a creditor, nor a judgment by both, to an action by the corporation.

4. But it is said, that although the real and personal estate, the securities and capital stock, are, in legal contemplation, vested in the corporation, yet the individual has a separate and distinct property and interest in his particular shares, by any injury to which he may have a separate damage. To some extent, it is true that he has a several interest in his shares ; but it is to be taken with some qualifications. Strictly speaking, shares in a bank do not constitute a legal estate and property ; it is rather a limited and qualified right which the stockholder has to participate, in a certain proportion, in the benefits of a common fund, vested in a corporation for the common use ; it is a qualified and equitable interest, a valuable interest, manifested usually by a certificate, which is transferable. To the extent of this separate and peculiar interest, a stockholder, no doubt, might maintain his separate and special action, according to the nature of the wrong done to him in respect to it ; as trover or trespass, for the conversion or tortious taking of his certificate ; trespass on the case for refusing to make a transfer on a proper occasion ; assumpsit for a dividend declared, and the like. But an injury done to the stock and capital, by negligence or misfeasance, is not an injury to such separate interest, but to the whole body of stockholders in common. It is like the case of a common nuisance, where one who suffers a special damage, peculiar to himself, and distinguishable in kind from that which he shares in the common injury, may maintain a special action. Otherwise, he cannot. Co. Lit. 56 *a.* 3 Steph. N. P. 2372. *Lansing* v. *Smith*, 8 Cow. 146.

But we are pressed with the argument, that for every

damage which one sustains, which is caused by the wrongful act of another, he ought to have a remedy. This is far from being universally true. Another maxim in regard to claims for damage is, *causa proxima, non remota, spectatur.* Thousands of instances occur, in which one sustains consequential and incidental damage from the misconduct of another, without a remedy at law. By the misconduct of the officers or agents of a parish, town, county, or even of the State or the Union, defalcations may take place, treasure be squandered and wasted, and all the members of the respective aggregate bodies suffer damage, for which the law, from the nature of the case, can afford no direct remedy. But the true answer to the objection is, that stockholders have a remedy, a theoretic one indeed, and perhaps often inadequate, in the power of the corporation, in its corporate capacity, to obtain redress for injuries done to the common property, by the recovery of damages ; and each individual stockholder has his remedy, through the powers thus vested in the corporation, for the common benefit.

On the whole, the court are of opinion that the demurrer is well taken, and that the action cannot be maintained.