This is a bill for instructions by the trustees under the will of Walter F. Harris. By the fifth paragraph the testator left his residuary estate in trust to pay $20,000 per year to his widow out of the "net yearly income." The remainder he ordered divided equally among his wife and children, with remainder over to the issue of each child when he or she *Page 469 
should die. The grandchildren are infants. During his lifetime Mr. Harris provided generously for his children. At the time of the making of the will some of the grandchildren were unborn. His widow has testified that it was his intention, as expressed to her, to leave each of the children an income of approximately $600 per month. From 1917 — he died January 23d 1930 — he operated a corporation, of which he was the sole stockholder, which I shall refer to as the Meadowbrook Company. He transferred to this one-third of the stock of the Newark Rivet Works — one thousand four hundred and forty shares. He was, during his lifetime, president of this company. He also transferred to Meadowbrook other securities. The purpose of the Meadowbrook Company appears to have been merely that of a holding company which received dividends from the various stocks held in its name and from time to time transferred the income thereon to Mr. Harris. It was still a going concern at the time of his death. Two months after his decease the trustees of his estate decided upon the liquidation of the company. As a result, all of its assets were transferred to the trustees in the form of a liquidating dividend and allocated by them to corpus.
Thereafter, all the monthly dividends of the Newark Rivet Works — the chief asset of Meadowbrook — were likewise allocated tocorpus. The trustees justify their action on the ground that since 1928 the Rivet works' dividends have been paid not from earnings but from accumulated surplus. They argue that they should disregard the entity of Meadowbrook — because it was a one-man corporation — and reserve the Rivet works' dividends forcorpus as they have not been paid from current earnings. It seems to me that it would be unwise for the court to go back of the corporate entity from which the testator, and now his trustees, received the dividends. It may be that the Newark Rivet Works pays dividends from stock held by it in corporations which are not paying from current earnings. To open such a door would lead to needless and perhaps endless complications. The legal entity of a corporation should be *Page 470 
strictly regarded even though there be but one stockholder. There are exceptions to this general rule — cases of attempted use of entity to shield wrong doing, to permit fraud, c. The case before me does not come within any of these. In United States
v. Milwaukee Refrigerator Transit Co., 142 Fed. Rep. 247;
(C.C.E.D. Wis. 1903 — at p. 255), it was held:
"If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule and until sufficient reason to the contrary appears; but when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons."
See, also, Salomon v. A. Salomon Co. (1897), A.C. 22;Button v. Hoffman, 61 Wis. 20; 20 N.W. Rep. 667 (1884);Baldwin v. Canfield, 26 Minn. 43; 1 N.W. Rep. 261, 276
(1879); Smith v. Hurd, 53 Mass. 371 (1847); Old DominionCopper Mining and Smelting Co. v. Bigelow, 203 Mass. 159;89 N.E. Rep. 193 (1909); Home Fire Insurance Co. v. Barber,67 Neb. 644; 93 N.W. Rep. 1024 (1903); Werner v. Hearst,177 N.Y. 63; 69 N.E. Rep. 22 (1903); Linn and Lane Timber Co. v.United States, 236 U.S. 574 (1915); Terhune v. HackensackSavings Bank, 45 N.J. Eq. 344; Stockton v. Central RailroadCo., 50 N.J. Eq. 52; Barrett v. Bloomfield Savings Institution,64 N.J. Eq. 425.
There is another phase of this matter which should be borne in mind — that is the intent of the testator. I have no doubt that he wished his children to enjoy a reasonable income during their lives. His grandchildren, the remaindermen, some of whom were not in existence when the will was drawn, could not have interested him particularly. He expressed this desire to his wife before his death — as I have noted above — and the will stripped of its technical verbiage which a layman perhaps could not precisely understand so indicates. To hold the entire proceeds of the Meadowbrook income would prevent his children from living in the manner *Page 471 
to which they have always been accustomed, and deprive them of the ability to care for their own children, the remaindermen, during their minority; and I believe would defeat the intent of the testator as I gather it from the will. The trustees admit such a construction would be a hardship upon the life tenants. I see no reason for reviving the corporate existence of Meadowbrook. Its dissolution and the transference of its assets to the trustees will simplify the administration of the estate.
My conclusion is that the dividends which were received by the testator through Meadowbrook be considered as income and paid to the life tenants. If it be true that this procedure will deplete the estate, it is unfortunate but it is no concern of this court. The testator clearly desired his children to enjoy a proper income and it is no fault of any one if, in the problematical future, this income diminishes or ceases. It makes no difference whether the Rivet works dividends are "extraordinary" or "ordinary." In either event they were intended by the testator for his children. If they be considered as ordinary dividends, they should be distributed under the phrase in the will "net yearly income." If they be extraordinary, I will direct the trustees to exercise their discretion under the tenth clause of the will and distribute them as income.
The only other question on which the trustees ask instructions is as to dividends declared before but paid after the death of the testator, on stocks other than Meadowbrook. It would be very difficult for the trustees to say what proportion of these was earned before and what after testator's decease. As the amount I understand is not large, I believe the most practical method in this instance is to hold that all dividends paid after the death of the testator be allocated to income.
 I will advise a decree according to these conclusions. *Page 472