J. G. ALSUP, *et al.*, PLAINTIFF IN ERROR, *v.* MURFREESBORO
BREAD & ICE CREAM CO. *et al.*, DEFENDANT IN ERROR.

*(Nashville,* December Term, 1932.)

Opinion filed February 11, 1933.

JAS. D. RICHARDSON, for defendant in error.

MR. JUSTICE COOK delivered the opinion of the Court.

The petitioners, suing as dependents, were awarded compensation under the Workmen's Compensation Act for the death of their son Gid H. Alsup. The controversy is whether or not (1) death resulted from injury by accident arising out of and in the course of employment and (2) whether Alsup was an employee of the corpora-

tion, it being insisted that as a stockholder and as secretary, treasurer and manager of the corporation he was an employer and not an employee.

■ The board of directors employed Alsup to serve the corporation as secretary, treasurer and general manager and fixed his pay at $200 a month. That he was a stockholder in the corporation is immaterial. The result is dependent upon whether he was an employee and as such was injured by the employment.

There is evidence that he had charge of the plant and in connection with another hired and dismissed workmen. Also that his duties carried him to all parts of the plant to supervise operation of the machinery and to inspect and see to its adjustment. His death was caused by contact with an electric current brought into the plant for the purpose of operating the machinery.

■ Just before the accident, while out on the sidewalk in front of the plant, Alsup told Monroe Overall, an employee, that he wanted 75 or 100 feet of wire to use in erecting an electric sign at a tourist home. The tourist home was not identified with the plant. After that statement Alsup called Overall into the building and there, while in the act of disconnecting a wire that ran to a motor attached to a cream testing machine, he received the electric shock that caused his death. His last words, spoken to Overall while out on the sidewalk, were: "Come back here and I will show you what I want." There is no evidence that the socket that connected the motor of the cream testing machine bore any relation to the mission on which Alsup intended to send Overall. The testimony of J. S. Jones tends to negative the idea of such relation. He said:

"Q. This little cream testing machine back there in

the back room, did it connect from the ceiling in a double socket and run down and over to a point near a window and hang down with a socket connecting to this cream machine? A. Yes sir.

"Q. What was the custom and usual practice when that machine was not in use as to whether or not the socket or switch was disconnected? A. It was supposed to be disconnected.

"Q. And was it usually left that way when not in use? A. Yes sir."

It was Alsup's custom to give attention to the electrically propelled machinery in the plant.

As to what occurred after Alsup called him into the building, we quote Overall:

"Q. After you left with him from out in front of the plant did he ever tell you what he was going to show you? A. No sir.

"Q. Did he make any remark to you at or about the time he took hold of the socket? A. No sir."

Referring to the accident, Overall testified:

"Q. Were you looking at him at the time? A. No sir. He walked up there and we both walked back to the back, and he taken hold of this plug, and about that time a door slammed and I looked around and he hollered, and when I looked around he had the plug in his hand.

"Q. What was he doing? A. I suppose he was disconnecting it."

The trial judge found that Alsup was attempting to make a disconnection for the purpose of stopping the motor that operated the cream testing machine and acted in the course of his duty as an employee. There is some material evidence to support the conclusion.

Alsup's relation to the corporation is well stated in the trial judge's finding, from which we quote:

"It appears that deceased, G. H. Alsup, Jr., was a stockholder, director and official, to-wit, Secretary and Treasurer. He was also named and selected by the corporation, by resolution adopted in a meeting of the Board of Directors, as general manager. His salary was fixed at the rate of $200 per month. His compensation is stated in the evidence as salary at the rate of $200 per month and this is so stated after the giving of evidence that his position was Secretary and Treasurer and General Manager. No part of the $200 per month is assigned to salary as Secretary, no part to salary as Treasurer, and no part to salary as manager. The evidence does not state in express terms what was his duty as Secretary, what, as Treasurer, or what, as manager. Nor does the evidence state, in express terms, what particular things he did in the execution of his official position of Secretary and Treasurer. The evidence does show some things which he did in the execution of his position as Manager, to-wit, 'hiring and firing' of workmen and looking after the general conduct of the business including acts of attention to, and manual labor upon, the machinery used and operated in making bread and ice cream. For this, I would infer and hold that, as Manager, he was a workman, a manual laborer with reference to the physical plant of the corporation, was in pursuance of his duties as Manager; and that the 'hiring and firing' as expressed in the evidence, was done by him as the agency instrumentality of the corporation; all, of course, in pursuance of his employment by the principal, the corporation itself acting through its Board of Directors.

"I hold, as a matter of law, that the finding to the ef-

fect that G. H. Alsup, Jr., as Manager, had cast upon him the duty of giving attention to the physical plant and the duty of bestowing manual labor upon this physical plant, under the said employment by the corporation, places him in the catagory of an employee whose injury is compensable, if it arises out of and in the course of his employment.

"I think also that this conclusion is to be reached upon another ground appearing in what immediately follows.

"The resolution employing G. H. Alsup, Jr., as Secretary and Treasurer and General Manager does not define the duties of each or all of these positions. They are combined in one personage. One salary is paid for all the duties to be performed. The corporation took out insurance on employees, not insurance as a guaranty that its minutes, ledgers and records and statements of account should be kept correctly, not as a guaranty that its moneys and treasurer would be honestly and properly accounted for, but insurance as a guaranty that its employees within the meaning of the Workmen's Compensation Law who were injured arising out of and in the line of employment should have medical and hospital treatment and that their injuries so received would be compensated for. In ascertaining the premium to be paid for such insurance, the corporation included the salary of deceased, Alsup, at $200 per month. In collecting the premium, after the death of said Alsup and with notice that his death was claimed to be compensable, the insurer, the defendant, Employers Liability Assurance Corporation, Limited, computed the premium, in part, as based upon said salary of $200 per month.

"Thus, both defendants have solemnly and with full

notice given and taken money based upon their respective representation to each other and agreement among themselves that deceased occupied the position of employee whose injury arising out of and in the line of his employment was compensable.

■ When the facts are undisputed, the question of the existence of the relationship of employer and employee is said to be one of law; otherwise a question of fact or a mixed question of law and fact. *Kenny* v. *Railroad Co.*, 152 N. Y. S., 117. That helps but little. It rather intensifies the problem, for by the contract between the corporation, a distinct entity, and Alsup, the individual, the two stood in the opposite relation of employer and employee. Alsup did not occupy the anomalous or dual relation that would have existed had the company been a partnership of which he was a member. *Gebers* v. *Candy Co.*, 159 Tenn., 51.

■ Relying upon cases arising under statutes of other States, it is urged that, as manager of the corporation with authority to hire help, Alsup was the employer. The Workmen's Compensation Acts of other jurisdictions differ in their provisions, and in considering the cases we must look to the particular statutes upon which the cases rest. The English Act excludes all employees receiving over 250 pounds a year, and so under that Act salaries become an element. The Texas Act provides that the president, secretary and directors of corporations shall not be deemed employees. *Cook* v. *Millers Indemnity Co.*, 240 S. W., 535. And so again the statute controls. The New York Act seems to leave the matter to determination of the employer and insurance carrier to provide by contract for the protection of employers who, while maintaining their status as such, join with the

work of employees and share with them the hazards of the employment.

It is not surprising that conflicting decisions arise from different Acts with varying provisions and phraseology. And so we shall not assume the unprofitable task of attempting to reconcile decisions and dicta to be found in the books. It is sufficient to say that the general rule, in the absence of a controlling statute, is that when none of the ordinary incidents of the relationship of employer and employee exist compensation is not allowable, as held in *Atchison* v. *Industrial Commission*, 44 A. L. R., 1213.

In this case the corporate entity, through its board of directors, employed Alsup as secretary, treasurer, and general manager. As such he stood in the opposite relation of employee to the corporation, the employer. By section 2 of the Compensation Act "employer" includes any individual, firm or corporation, and "employee" includes every person in the service of the employer. These words seem to have been used in their ordinary sense. In its broad sense, the term employee means one employed to serve another, as distinguished from workman, one who labors for another. The ordinary meaning of the words used in the statute ought not be narrowed or expanded by judicial dictum in the absence of some express or implied or expanding provision of the statute; and so we come back to the determinative proposition of whether or not the ordinary relation of employer and employee existed between the corporation and Alsup. The facts found by the trial judge, and which have been quoted, are supported by the evidence. Moreover, a rider attached to the policy of insurance issued to the employer provided:

"If this employer is a corporation, the entire remuneration of the President, any Vice-President, Secretary or Treasurer shall be disclosed and made subject to a premium charge at the rate applicable to the hazard to which each such officer is exposed, which rate shall be applied to the actual remuneration of each such officer but not in excess of $100 per week. If any such officer is exposed to varying hazards, premium shall be charged on the basis of the highest rate for any hazard to which he is exposed."

These facts bring the case within the reasoning and the rule as applied in *Southern Surety Co.* v. *Childers*, 25 A. L. R., 373. See also *Skouitchi* v. *Chic Cloak & Suit Co.*, 15 A. L. R., 1288, Anno., and *Linnane* v. *Brewing Co.*, L. R. A. 1917D, Note XIII, p. 144, and Note I, p. 145. These cases support the conclusion of the trial court that Alsup was an employee within the meaning of the Workmen's Compensation Act.

Affirmed.