ALPERIN *et al. v.* EAGLE INDEMNITY CO.

(*Jackson,* April Term, 1935.)

Opinion filed June 29, 1935.

216

CHARLES L. NEELY, of Memphis, for plaintiffs in error.

ALLEN COX, JR., of Memphis, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The trial judge dismissed this petition for compensation by the widow of David Alperin. He found from the facts, which were stipulated, that Alperin, who was killed in an automobile accident en route to Chicago to visit the World Fair, and to purchase merchandise for the corporation, M. Alperin & Sons, Inc., in which he held the office of secretary and treasurer, was (1) not an employee of the corporation within the meaning of the Compensation Act of 1919 (Pub. Acts 1919, chapter 123), as provided in the controlling section thereof (Code, section 6852), ''in that he was not working for M. Alperin

& Sons, Incorporated, under any contract of hire either express or implied," and (2) that he was not included in the compensation coverage (nor were the other officers of the corporation) and this non-inclusion was intentional. The defendant, Eagle Indemnity Company, was the compensation insurer of this corporation.

Petitioner appeals; the issues presented by her assignments of error, brief, and argument being thus summarized by counsel: "There was only one question in this whole lawsuit and that question was whether or not a director, Secretary and Treasurer, who was performing the duties of a foreman, superintendent or manager and not the duties of a director or a Secretary and Treasurer would be entitled to compensation." The holding of this court in the recent case of *Alsup* v. *Murfreesboro Bread & Ice Cream Company*, 165 Tenn., 591, 56 S. W. (2d), 746, is relied on for petitioner as controlling and conclusive of this case.

It may be conceded that that case is authority for the proposition that the holding of the official position described does not preclude recovery of compensation, when it appears that by contract, express or implied, the injured person was also engaged at the time in rendering services as a workman, foreman, or superintendent, being paid for such services by the corporation. The "dual relationship" doctrine was approved in this state in the *Alsup Case*, and given application on the facts appearing. In at least three respects, however, the case at bar is to be distinguished on its facts from the *Alsup Case*.

1. In the *Alsup Case* there was a definite monthly compensation for services, fixed by contract at the sum of $200. Quite obviously this compensation was for

work to be done, independent altogether of any possibly contemplated demand for services to be rendered as a director, stockholder, or officer. In the case at bar David Alperin had no contract or arrangement for the payment to him of any salary, or wage, for services rendered. He and his three brothers owned all the stock of the corporation in equal shares, and had never fixed for any of them any basis of compensation for their services, all alike devoting their efforts and energies to the business, without distinction as to compensation; the practice being for each to draw money as required or desired from the corporate treasury and charge themselves accordingly on the books. No dividends appear to have been declared and no salaries charged up. An anomalous corporate situation was created. However, creditors not complaining, these equal holders of all the stock, acting by common consent, were probably, in effect, in this manner distributing the corporate profits. It was this anomalous situation shown by the stipulation which perhaps led the trial judge to hold that no recovery could be had for compensation under the act where there was no evidence showing that the deceased was ''working for M. Alperin & Sons, Inc., under any contract of hire,'' etc. The picture presented appears to be that of brothers who decide to do business together under a corporate charter, agreeing to pool their interests and depend for their compensation for services rendered upon the profits of the business. It is not surprising that the learned trial judge was unable to find in such circumstances a ''contract of hire.''

2. In the second place, unlike the *Alsup Case,* the stipulation here seems to show a definite predetermination on the part of these brothers not to bring them-

selves within the Compensation Law. We quote from the stipulation: "At the time this insurance was written the officials and directors of M. Alperin & Sons, Inc., realized that if they themselves were to be covered by this insurance that the amounts they withdrew from the business for living expenses or for any personal accounts would have to be included in the payroll audit which formed the basis of the premium which was the consideration for the compensation insurance policy. The officials at that time selected not to be covered by compensation insurance and not to include their checking or drawing accounts in the estimated premium or in the final payroll audit which formed the basis of the premium for the policy. The first annual payroll audit was made on December 22, 1932, including period from October 26, 1931, to October 26, 1932, and at the desire of the officials and directors of M. Alperin & Sons., Inc., the checking or drawing accounts of the officials and directors, i. e., the four brothers operating the business, were not included in the payroll audit and no premium was paid for any compensation coverage to them."

The Tennessee Compensation Law is elective and express provision is made for the exercise by any employee of a choice not to be bound by or come within it. Code, section 6854. The stipulation as above quoted states as a fact that: "The officials [which include David Alperin] at that time selected not to be covered by compensation insurance," etc. The word "selected" is the legal equivalent of "elected," and it would seem that David Alperin by this election clearly withdrew himself from the operation of the Compensation Act and could not claim under it. It is true that the act provides the manner in which the employee shall give notice of his

choice, and the stipulation does not set out affirmatively that this direction of the statute was carried out in the manner prescribed. But (1) the stipulation recites broadly a conclusion that the officials did the essential thing, that is, exercised their option, "selected not to be covered," and it was not essential to detail how, in what form or manner, they did the thing; and (2) looking to substance, rather than form, by analogy to the construction this court has repeatedly given to other provisions for formal notice to the employer, for example, notice of injury, it may properly be held that since these "officials" were those entitled to receive the notice, and were in fact both givers and recipients of it, the formal written and posted notices would be waived as a mere idle ceremony. And looking beyond the particular recital quoted, it is clearly apparent from the facts stipulated as a whole that it was not the purpose of these brothers, officers, and owners of the business, that they or either of them should be within the Compensation Law, so as to support a recovery thereunder, either against their closely owned corporation or its insurer, and that such a liability was not within the contemplation of the insurer.

3. And, finally, again unlike the facts in the *Alsup Case,* here neither David Alperin, nor his associate officers, as found by the trial judge, was "included in the compensation coverage" of the policy issued, and "this noninclusion was intentional." That the officer injured was included, and a premium paid for his coverage, was noted in the *Alsup Case* as a materially controlling factor. The contrary appearing here, a contrary deduction is compelled. It is significant that on the face of the policy, under the heading "Classifica-

tion of operations," where the estimated renumerations are shown, with the several rates and premiums, under the subhead "President, any Vice-President, Secretary or Treasurer of Corporate Employer who performs duties of Superintendent, Foreman or Workman," the spaces opposite are left entirely vacant, giving no estimated amounts, rates, etc. If this officer was intended to be classed as one performing "duties of a Superintendent, Foreman or Workman," his remuneration as such should have been here entered. And while it is true that premiums were subject to adjustment upon audits from time to time, with liability accordingly, it does not appear that any interim audit recognized or took account of the withdrawals of these brother officers in computing the premiums. We quote from the stipulation of facts, page 28 of the transcript, the following: "The Eagle Indemnity Company did not include the sums drawn from the business by the executive officials and directors, the brothers, either in its estimated premium paid when the policy was taken out May 1, 1933, or were the checking or drawing accounts of the four officials, brothers, included in the payroll audit made approximately the 1st of June, 1934, covering period from May 1, 1933, to May 1, 1934, when a final premium was paid on the policy for one year's coverage."

It is significant that it was within the period covered by the audit referred to in the above quotation that David Alperin was killed, the 21st day of June, 1933.

An extended and interesting discussion of cases from other jurisdictions has been submitted on the briefs, but we have found it unnecessary to go beyond this state, and our recent case of *Alsup* v. *Murfreesboro Bread & Ice Cream Company, supra,* which recognizes the doc-

trine of dual relationship. In that case we applied this doctrine. Here the facts preclude its application. Many of the decisions from other states are of little aid because of statutory variations, and, particularly pertinent here, the existence of compulsory systems, as in New York, for example, rather than elective, as in Tennessee.

This case turns largely on its peculiar facts. For the cumulative reasons indicated, we are constrained to affirm.