26 N.J. Super. 550 (1953)
98 A.2d 142
EUGENE GOLDMANN, PETITIONER-APPELLEE,
v.
JOHANNA FARMS, INC., AND LUMBER MUTUAL CASUALTY INSURANCE COMPANY OF NEW YORK, RESPONDENTS-APPELLANTS.
Superior Court of New Jersey, Mercer County Court Law Division.
Decided June 11, 1953.
*553 Mr. Herman M. Wilson, attorney for petitioner-appellee.
Mr. Frederick J. Fox, attorney for respondents-appellants (Mr. John J. Connell appearing).
HUTCHINSON, J.C.C.
The respondents, Johanna Farms, Inc. and Lumber Mutual Casualty Insurance Company of New York, appeal to this court from an award of total permanent disability made against them and entered in favor of the petitioner, Eugene Goldmann, by the Division of Workmen's Compensation of the Department of Labor and Industry.
The issues which are presented by this appeal are: (1) whether the award made against the respondent insurance carrier is proper; (2) whether petitioner was an employee of respondent Johanna Farms, Inc., and (3) whether the accident arose out of and in the course of the employment.
Petitioner alleges that he suffered an accident arising out of and in the course of his employment with the respondent Johanna Farms, Inc. on November 25, 1950, the date of the now-famous hurricane. Petitioner, who was a vice-president of the corporation and also its farm manager, testified that on that date, while at his home, he received a telephone call from his son, Kurt Goldmann, the assistant farm manager, who requested him to go to a milk depot on the premises leased by the respondent corporation and check *554 the existing milk supply there. Petitioner did so, and as he was ascending the porch to his home he was blown off the steps and sustained a leg fracture.
The deputy director held that the petitioner was an employee of the respondent within the meaning of the Workmen's Compensation Act, that he suffered a compensable accident while in the pursuit of a special mission, and that the fracture sustained aggravated a pre-existing heart condition which resulted in total permanent disability. Accordingly, an award was made against the respondents Johanna Farms, Inc. and its insurance carrier, the Lumber Mutual Casualty Insurance Company of New York.
The first question to be considered is the propriety of the award made against the insurance carrier. The evening before the first hearing in this cause in the Bureau, the insurance carrier served upon the attorney for Johanna Farms, Inc. a notice of disclaimer under its policy and a reservation of rights on the grounds of non-coverage. It appears from the record that a motion was made to strike the carrier as a party, that the motion was consented to by the opposing counsel and apparently granted by the deputy director. Nevertheless, the insurance carrier was included in the award and judgment. It cannot be ascertained from the record whether the inclusion of the carrier was a result of inadvertence or whether it was an intentional act on the part of the deputy director. It is unnecessary to decide on what grounds the carrier was kept in, since in any event, the award made against it is invalid for want of jurisdiction in the Bureau to make such an award against the carrier.
R.S. 34:15-85 gives the petitioner the right to join both the employer and the insurance carrier in his claim petition, and when so joined an effective award may be obtained in the Bureau against the carrier. Brown v. Conover, 116 N.J.L. 184 (Sup. Ct. 1936); Miller v. National Chair Co., 19 N.J. Misc. 275 (W.C.B. 1941), affirmed 127 N.J.L. 414 (Sup. Ct. 1941); Amend v. Amend, 12 N.J. Super. 425 (Cty. Ct. 1950). However, the power of the Bureau to make an effective award against the carrier is *555 limited to those cases where the insurance carrier does not raise the issue of non-coverage, which is a legal issue not cognizable by the Bureau and which a deputy director is without jurisdiction to decide. Whenever the issue of non-coverage is raised by the insurance carrier, any award which is subsequently rendered against such carrier is invalid, since it is awarded by a tribunal which lacked jurisdiction over the subject matter. American Mutual Liability Ins. Co. v. Chodosh, 123 N.J.L. 81 (Sup. Ct. 1939), affirmed 124 N.J.L. 561 (E. & A. 1940); Belanowitz v. Travelers Ins. Co., 125 N.J.L. 301 (E. & A. 1940); Mitchell v. Taylor, 18 N.J. Misc. 255 (W.C.B. 1940); Cunningham v. Ashurst, 131 N.J.L. 260 (Sup. Ct. 1944).
An insurance carrier may be estopped, however, from denying its liability as determined by the Bureau when it has unconditionally defended the assured in the suit without obtaining from the assured an agreement of non-waiver, or without serving a notice of disclaimer or without making a reservation of its rights until after the recovery of the judgment against the assured. O'Dowd v. U.S. Fidelity & Guaranty Company, 117 N.J.L. 444 (E. & A. 1936).
There is no question of estoppel in this case, since prior to the hearing in the Bureau the carrier served a notice of disclaimer and made a reservation of its rights.
The petitioner is not without recourse against the insurance carrier, however. Upon the failure of the employer to make adequate and continuous payments, R.S. 34:15-84 provides that the employee may bring an action against the carrier to enforce the award in the County Court where his judgment is docketed. American Mutual Liability Ins. Co. v. Chodosh, supra; Cunningham v. Ashurst, supra. The proper procedure is by petition and order to show cause. Raab v. American Casualty Co., 4 N.J. 303 (1950).
We turn now to a more complex problem, whether the petitioner was an employee of Johanna Farms, Inc. Petitioner was, at the time of the occurrence of this accident, the vice-president of the respondent corporation and its farm manager. He testified that as farm manager he had to *556 "hire labor, to supervise labor, and everything to plan the work. I have to buy feed, buy cattle, and have to sell cattle, and buy and sell grain." It was also necessary on occasion for petitioner, in the performance of his duties in and about the farm, to assist in some manual duties, such as milking the cows, washing the udders, carrying the milk, feeding and caring for the poultry and cattle and taking part in the harvesting. This testimony was corroborated by Mrs. Goldmann and petitioner's sons, Peter and Kurt. These seem to be the usual duties inherent in the position of a manager. It is significant to note that all of this testimony stands unrefuted.
The law is well settled in this State that the mere fact that one is an officer of a corporation, does not, under our Workmen's Compensation Act, necessarily preclude recovery for a compensable accident as an employee of the corporation. Such an officer may serve both as an officer and a workman under circumstances making him an employee within the meaning of the act, and if he sustains injury while performing duties in the latter capacity, there may be a recovery under the act. Adam Black & Sons v. Court of Common Pleas, 8 N.J. Misc. 442 (Sup. Ct. 1930); Strang v. Strang Electric Co., 8 N.J. Misc. 873 (Sup. Ct. 1930); Hannaford v. Central R.R. Co. of N.J., 115 N.J.L. 573 (Sup. Ct. 1935); McGiffin v. Peoples Burner & Fuel Corp., 18 N.J. Misc. 339 (W.C.B. 1940). The theory behind this proposition is that the corporate employer has an entity quite apart from that of its shareholders or officers. Adam Black & Sons v. Court of Common Pleas, supra.
It is evident from a close scrutiny of the testimony in this case that petitioner was an employee of the respondent corporation within the meaning of the Workmen's Compensation Act. Therefore, if the accident occurred while he was serving in his capacity as manager, he is entitled to compensation.
However, it is urged on this appeal that this is an instance in which the corporate veil should be pierced, and that in so doing, it will be discovered that petitioner is not a servant *557 but a master, and as such is not entitled to the benefits of the act. This is a novel contention in this field and to pass it by would not do justice to the ingenious argument presented. It will be necessary in deciding this question to examine the events which led up to the formation of the respondent corporation and the petitioner's status therein.
In 1944 petitioner was one of four partners comprising the partnership known as Pennington Dairy Farms. Petitioner knew of a Mrs. Neustadt who owned Johanna Farms, and who at that time was desirous of selling her farm. Since Pennington Dairy Farms was in need of a bottling plant and Johanna Farms owned such a plant, negotiations were entered into which finally resulted in the following arrangement. A corporation (the respondent Johanna Farms, Inc.) was formed. Mrs. Neustadt transferred all the property of Johanna Farms to this corporation. In return, she received all of the stock of the respondent corporation, 50% of which she sold to the individual members of the partnership, Pennington Dairy Farms. Pursuant to an agreement entered into before the incorporation, Mrs. Neustadt was to manage the creamery for the corporation at a salary of $500 per month. Petitioner was to manage the farm at a similar salary. The agreement also provided that Mrs. Neustadt was to pick two of the four directors and the Pennington Dairy Farms partners the other two. Pursuant to this agreement, Mrs. Neustadt was elected president of the corporation and petitioner was elected vice-president. Following the incorporation, the agreements were confirmed.
On the same day that these agreements were confirmed, petitioner sent a letter to the respondent corporation wherein he recited that since he was still associated with Pennington Dairy Farms which was entitled to his full time and services, and since it was by arrangement of the said partnership that he was rendering personal services to the respondent, he authorized Johanna Farms, Inc. to pay his salary directly to Pennington Dairy Farms.
On this set of facts it is now urged that the corporate veil should be pierced to show that what these negotiations *558 amounted to was a sale by Mrs. Neustadt to Pennington Dairy Farms of a half-interest in the Johanna Farms in return for which she became a general partner in Pennington Dairy Farms. With the veil thus pierced, petitioner retains his status as partner in the Pennington Dairy Farms, and as such is not covered by the Workmen's Compensation Act.
Particular stress is laid upon the fact that since Mrs. Neustadt and the individuals comprising the Pennington Dairy Farms partnership each picked two of the four directors, and that since they could not be discharged nor have their salaries reduced without unanimous consent of the board of directors, they thereby could not suffer discharge nor salary reduction without their own consent. This argument, of course, assumes that the petitioner controls the votes of the other three members of his faction. However, even assuming, ad arguendo, that he does, this situation does not justify disregarding the corporate entity. In Adam Black v. Court of Common Pleas, supra, a closed family corporation was involved and it appears that in in that case the petitioner had more of an interest in the corporation than Goldmann does here, and yet in that case the court held that the corporation had an entity apart from that of its officers and shareholders.
It is fundamental that, no matter how shares of stock are held, the corporation itself is an entity wholly separate and distinct from the individuals who compose and control it. National Newark, etc., Co. v. Work, 109 N.J. Eq. 468 (Ch. 1932); Schmid v. First Camden National Bank, etc., Co., 130 N.J. Eq. 254 (Ch. 1941). And this general rule applies even though all of the stock of the corporation is owned by one person. White v. Evans, 117 N.J. Eq. 1 (E. & A. 1934); Hackensack Trust Co. v. City of Hackensack, 116 N.J.L. 343 (Sup. Ct. 1936).
However, this rule is not without exceptions. In certain instances the court will pierce the corporate veil. In Schmid v. First Camden National Bank, etc., Co., supra, the court in treating this matter said:
*559 "In 18 C.J.S., Corporations, §§ 5, 6, the distinction between the fundamental concept and the exception is clearly stated. A corporation, it is there declared, `is to be treated as a separate entity, unless the facts show that such separate corporate existence is a mere sham, or has been used as an instrument for concealing the truth.' * * * `It must appear not only that the corporation is controlled and influenced by one or a few persons, but, in addition, it is necessary to demonstrate that the corporate cloak is utilized as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate fraud.'"
See also Trachman v. Trugman, 117 N.J. Eq. 167 (Ch. 1934); Murtland Holding Co. v. Egg Harbor, etc., Bank, 123 N.J. Eq. 117 (Ch. 1938); Telis v. Telis, 132 N.J. Eq. 25 (E. & A. 1942).
In Irving Investment Co. v. Gordon, 3 N.J. 217 (1949), the Supreme Court reiterated the proposition that "It is where the corporate form is used as a shield behind which injustice is sought to be done by those who have the control of it that equity penetrates the veil."
The party who seeks to have this court apply the exception to the rule rather than the fundamental principle that a corporation is a separate entity, must carry the burden of proof. Schmid v. First Camden National Bank, etc., Co., supra. It is evident that the burden has not been satisfied in this case. There is no showing that the corporate entity in this case has been used to accomplish an unjust, wrongful or fraudulent purpose.
Accordingly, I conclude that the entity will not be disregarded in this instance and that the rule pronounced in Adam Black v. Court of Common Pleas, supra, prevails in this case.
We now arrive at the final issue, whether the petitioner suffered an accident arising out of and in the course of his employment. There is much disputed testimony on this phase of the case. Petitioner testified that while he was at his home at the Pennington Dairy Farms on the morning of the accident, he received a telephone call from his son Kurt who requested him to go to a milk depot located a few hundred yards away from petitioner's home and leased by the *560 respondent corporation, to check the milk supply there. Petitioner checked the supply and was ascending the back porch of the house when a gust of wind blew him from the porch onto the ground causing the leg fracture. He testified that he lay there until his son Peter came along and carried him into the house.
Petitioner's son, Kurt, testified that because of the power failure it was necessary to ascertain the milk supply at the depot. Because the telephones at Johanna Farms, Inc. were not functioning, he drove to a service station and made the telephone call from there. He testified that his father did not call him back to report on the milk supply.
Elizabeth Morris, the attendant at the service station from where Kurt made the telephone call, corroborated the fact of the call to petitioner and the fact of the lack of response.
Petitioner's son, Peter, testified that on that day he drove his father to the barber shop in Pennington, that he drove him back home and returned to Pennington to pick up some champagne glasses. On his return home he discovered his father lying on the ground by the porch.
Steven J. Faherty, owner of the liquor store, corroborated the purchase of the champagne glasses and the fact that Peter was alone when he made the purchase.
Respondent produced two witnesses, Malcolm Joiner and Earl Wilson, who drove petitioner to the hospital in an ambulance. Joiner testified that both petitioner and Peter told him that the accident occurred as they were returning from Pennington with groceries. Wilson stated that the petitioner gave him the same version of the accident in the ambulance.
It must be remembered that when this court must determine an issue of credibility on appeal, the determinations of the deputy director will not be lightly disturbed in view of the distinct advantage which he has in his personal observation of the witnesses. Gilbert v. Gilbert Machine Works, Inc., 122 N.J.L. 533 (Sup. Ct. 1939); Mason v. Evans, 5 N.J. Super. 338 (App. Div. 1949); Sarvent v. Federal Shipbuilding & Drydock Co., 7 N.J. Super. 94 (App. Div. *561 1950); Donofrio v. Haag Brothers, Inc., 10 N.J. Super. 258 (App. Div. 1950).
This court is not unmindful of the fact that the petitioner's testimony was taken by deposition and that accordingly the deputy director did not have the opportunity of observing his demeanor on the witness stand. However, after a close and careful study of all of the testimony in this cause, this court can come to no other conclusion than to concur in the factual determination of the deputy director.
The testimony of the petitioner and his witnesses was sincere, straightforward, and without hesitance. The respondent's witnesses, on the other hand, seemed uncertain and hesitant.
Since this accident occurred while petitioner was in the performance of a special service for his employer, it is one which arose out of and in the course of his employment and is, therefore, compensable under the Workmen's Compensation Act. Bobertz v. Board of Education of Hillside Twp., 134 N.J.L. 444 (Sup. Ct. 1946), reversed on other grounds, 135 N.J.L. 555 (E. & A. 1947); Bradley v. Danzis Pharmacy, 5 N.J. Super. 330 (App. Div. 1949).
Accordingly, the award is affirmed as to respondent-appellant Johanna Farms, Inc. and reversed as to respondent-appellant Lumber Mutual Casualty Insurance Company of New York, and judgment may be entered accordingly.