67 N.J. Super. 188 (1961)
170 A.2d 69
JESSIE JORDAN, PETITIONER-RESPONDENT,
v.
ALEXANDER F. FERRO, T/A DALE IRON AND METAL COMPANY, AND PENNSYLVANIA THRESHERMEN AND FARMERS' MUTUAL CASUALTY INSURANCE COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Union County Court, Law Division.
Decided April 10, 1961.
Mr. Louis C. Jacobson for the petitioner-respondent (Messrs. Brass and Brass, attorneys).
Mr. James T. Kirk for the respondent Alexander F. Ferro; Mr. Brian D. Conlan for the respondent-appellant Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company (Messrs. Gurry and Conlan, attorneys).
HOPKINS, J.C.C.
Jessie Jordan, the petitioner, was severely and permanently injured on June 19, 1957 in an accident arising out of and in the course of his employment by Alexander F. Ferro, trading as Dale Iron and Metal Company. On April 27, 1959 a substantial judgment was entered in favor of the petitioner against his employer and Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company, alleged to be the insurance carrier. On the present appeal of the insurance company, two questions are presented for determination: (1) the jurisdiction of the Workmen's Compensation Division of the Department of Labor and Industry to enter the judgment; and (2) the factual existence of insurance coverage at the time of the accident. Normally the question of jurisdiction would be determined first; but, in order that the matter *191 may be completely delineated, the factual situation will be explored prior to the determination of the jurisdictional question.

I.
Alexander Ferro, the respondent employer, was engaged in business in New York under a corporate setup known as Jafco Iron and Metal Corporation. He was familiar with the general procedures involved in the issuance of insurance policies, and particularly the issuance of and the necessity for workmen's compensation insurance, at least so far as that state is concerned. He entered into business in New Jersey on May 7, 1957, individually, trading as Dale Iron and Metal Company, and in anticipation thereof he engaged Henry Pflug, a licensed insurance broker of New Jersey, to secure compensation insurance for him. The broker was unable to secure insurance on a voluntary basis through the regular channels and advised Ferro he would have to make application for assignment of an insurance carrier in accordance with the New Jersey Assigned Risk Plan  Workmen's Compensation Insurance. On May 16, 1957 such an application was filled out, signed by Ferro, and filed with the Bureau.
At the top of the application in red ink under the heading "Important" the following words appear  "No insurance is provided by this application. Insurance becomes effective only in accordance with the terms of the Assigned Risk Plan." Paragraph 5 of the Plan contains the language pertinent to this matter. It states, in part:
"Upon receipt of an assignment from the Bureau, the designated carrier shall make available to the employer Workmen's Compensation and Employers' Liability insurance to become effective not more than five business days after the date of the assignment, provided the premium is paid to the carrier. In the event that the premium is not paid within the five day period, the company shall be authorized to defer the effective date of the insurance until 12:01 a.m. on the day following payment." (Emphasis supplied.)
*192 This provision of the Plan was known not only to the respondent employer's broker, a licensed broker for over 20 years, but he also testified as follows:
"Q. As an insurance broker with the client, did you convey to Mr. Ferro that he had no insurance until the premium was paid? A. I told him that originally.
Q. What did you tell him originally? A. I told him that the premium had to be paid to the company before any coverage.
Q. When did you tell him that? A. I told him the day I worked up the assignment."
Under date of May 29, 1957 the Bureau directed a letter to Ferro, with a copy to his broker, advising that the risk had been assigned to the respondent insurance company. The second paragraph of that letter is as follows:
"We direct your attention particularly to the provision of the Plan which provides that the proper premium be paid to the company before any coverage is issued."
On the same day, May 29, 1957, the Bureau directed a covering letter to the insurance company advising that the risk had been assigned to it. On May 31, 1957 the insurance company wrote Ferro, with copy to the broker, asking for his check for $1,835.50, the estimated annual premium, and further stating:
"Your prompt attention to the above will be appreciated, as coverage cannot be made effective until receipt of the premium."
Upon receipt of his copy of the letter, the broker contacted Ferro but was unable to secure a check for the premium. On June 14, 1957 the insurance company directed another letter to Ferro, with copy to the broker, advising they had received no reply to their letter of May 31, 1957 and stating:
"To date we have not received your check and now we are wondering if this coverage is no longer desired. Will you kindly advise."
*193 At this time the broker again contacted Ferro and told him he had better get the check but was unable to secure one.
The next steps are of particular significance. On June 19, 1957 the accident occurred and the petitioner received the substantial injuries referred to. On the afternoon of that day, a check for $600 dated June 18, 1957 was delivered to the broker and he wrote the insurance company enclosing a check
"in the amount of $600 which they are tendering on acct of their premium of $1835.50 and ask if it would be in order to write the policy and they would arrange to pay the balance as soon as they can make arrangements for the same."
The letter was handwritten by the broker "because I wanted to get it off fast."
On June 24, 1957 the insurance company wrote the broker returning the check for $600, advising it would accept nothing less than full payment. On the same day, June 24, 1957, the broker had mailed Ferro's check for $1,235, the balance of the premium, to the insurance company and upon receipt by him of the returned check for $600 he again mailed it to the insurance company on June 25, 1957. The insurance carrier, upon receipt of the check for $1,235 on June 26, 1957, issued its policy effective 12:01 A.M. June 27, 1957 to June 27, 1958. The check for $600 was again received by it on June 28, 1957; both checks were deposited and returned for insufficient funds. Notice of cancellation was sent to the employer, Ferro, but before the cancellation date payment was made by certified check and the policy was reinstated as of June 27, 1957.
A simple reading of the chronological data, together with the provisions of the plan, makes it obvious that on June 19, 1957, the date of the accident, there was no effective policy of insurance or any contractual liability between the insurance company and the employer, either in a regular business way or under the rules of the New Jersey Assigned *194 Risk Plan for Workmen's Compensation Insurance, by which liability can, or should be, imposed upon the respondent insurance company.
A substantial part of the testimony and of the argument of counsel is devoted to an asserted ambiguity in the dealings and correspondence between the employer and the insurance company under which it is claimed the employer was led to believe he was insured prior to the accident. Particular attention is directed in the proceedings below, and in the decision of the deputy director, to the language used in the letter of the insurance company dated June 14, 1957 and recited above. Taken in context with all of the correspondence and dealings among the insurance company, the broker and the employer, there does not appear to this court to be the slightest ambiguity or uncertainty as to the situation. No binder or policy of insurance was issued by the carrier until, after receipt by it on June 26, 1957 of a substantial part of the premium, it elected to issue a policy effective 12:01 A.M. the following day, in accordance with the rules of the Assigned Risk Plan. Inference is drawn by the deputy director that the carrier must have learned of the injury shortly after June 19, 1957 (the evidence is to the contrary) and for that reason it elected to date its policy as of June 27, 1957. Such inference falls of its own weight. If the carrier knew of the accident and injury prior to its receipt of part payment and issuance of its policy, would it have issued any policy at all? The answer is obvious. Reference is also made to the assumption or belief of the employer Ferro that he had insurance, to which he was permitted to testify. What other answer could be expected of a person faced with payment of a very substantial judgment individually, unless he could shift responsibility to a carrier to whom he had been assigned?
And in that connection the circumstances surrounding June 19, 1957, the day of the accident, arouse suspicions which practically speak for themselves. On that day the petitioner was seriously injured. On the afternoon of that *195 day the employer's check for $600 on account of the premium was delivered to the broker. It was dated June 18, 1957, but this fact was not explored on direct or cross-examination. In any event, on the afternoon of the 19th the broker sent a handwritten letter to the carrier enclosing the check "because I wanted to get it off fast." Is it not the more logical inference that, the accident having already occurred, the employer was making an abortive attempt to get insurance coverage which he was aware he did not then have? If the issue of good faith is here involved, it must be resolved against the employer.
On the general issue here presented, if the question of jurisdiction either in this court or in the Bureau were to be assumed, or so decided, this court is of the opinion that for the reasons stated the decision of the deputy director should be, and the same hereby is, reversed.

II.
Following the concededly work-connected accident of June 19, 1957, a petition was filed February 19, 1958 on behalf of the petitioner in which his employer and the carrier were both named as respondents. By formal answer filed March 26, 1958 the carrier denied liability in that no insurance coverage was furnished by it on the day of the accident and that it was not the compensation carrier on that date. It further and specifically denied that the Bureau had jurisdiction in the matter to pass upon the question thus raised.
At the first hearing held September 19, 1958, to determine the extent of the petitioner's disability, counsel for the carrier announced to the court that notice of non-coverage had been given to employer and employee; that he had raised the question of jurisdiction in his answer, was entering a special appearance and did not intend to take an active part in the proceedings. The deputy director agreed and the case proceeded on that basis on that day *196 and on October 3, 1958. At a continued hearing on January 16, 1959, after the conclusion of all evidence regarding the accident and conclusion of all medical testimony, the deputy director over the objection of counsel for the carrier reversed his position and decided he had jurisdiction to decide the question of coverage and had jurisdiction to enter a judgment against the carrier if the facts so warranted. Counsel for the carrier was thereby placed in an untenable position. He had taken no active part in the previous hearings on the facts of the case, had not cross-examined any of the medical experts for the employee, and had presented no testimony of his own, on the statement of the court and the acquiescence of all counsel that the issue relating to him was a matter for the Law Division. If he now remained steadfast on the question of jurisdiction and presented no testimony on the question of coverage, he was presented with the possibility that the facts relating to the policy, and set forth in the first part of this opinion, might never come before the court. His request for leave to present this testimony was not only understandable, but, under the situation then prevailing, imperative; and the question of estoppel cannot now be raised by opposing counsel.
The law appears well settled that the question of coverage of the policy is not within the jurisdiction of the Workmen's Compensation Bureau and any finding on that point by the deputy director is not valid against the carrier. The Bureau is a creature of the statute and as such its jurisdiction is special and limited, and where there is reasonable doubt of the existence of a particular power, the power is denied. Deviations from the Bureau's established sphere of action cannot be given by consent of the parties or be made effective by waiver or estoppel, and where the Bureau transcends its jurisdiction, the action is a nullity. Nagy v. Ford Motor Co., 6 N.J. 341 (1951). The Bureau is invested only with such authority as is expressly conferred, or such as is by fair implication and intendment incident to *197 and included in the authority expressly granted for the enforcement of the statute. Any reasonable doubt of the existence of a particular power in the bureau is to be resolved against the exercise of such authority, P. Bronstein & Co., Inc. v. Hoffman, 117 N.J.L. 500 (E. & A. 1936).
In American Mutual Liability Ins. Co. of Boston v. Chodosh, 123 N.J.L. 81, at page 84 (Sup. Ct. 1939), affirmed 124 N.J.L. 561 (E. & A. 1940), the court said:
"We agree that the determination of the bureau is res judicata on the matter of the liability of the employer to pay the award but we do not agree that such judgment is res judicata on the matter of the liability of the carrier. The carrier informed the employer that the operation out of which the death by accident occurred was not within the coverage of the contract of insurance. It had the right to be heard on this issue but it could not have a finding on that point in the bureau. The jurisdiction of the bureau extends only to whether the injury or death by accident arose out of and in the course of the employment. It has no authority to determine an issue like the one here presented."
To the same effect see Belanowitz v. Travelers Ins. Co., 125 N.J.L. 301 (E. & A. 1940); Mitchell v. Taylor, 18 N.J. Misc. 255 (W.C.B. 1940); Cunningham v. Ashurst, 131 N.J.L. 260 (Sup. Ct. 1944).
The power of the Bureau to make an effective award against the carrier is limited to those cases where the insurance carrier does not raise the issue of non-coverage, which is a legal issue not cognizable by the Bureau and which a deputy director is without jurisdiction to decide. Whenever the issue of non-coverage is raised by the insurance carrier, any award which is subsequently rendered against such carrier is invalid, since it is awarded by a tribunal which lacked jurisdiction over the subject matter. Goldmann v. Johanna Farms, Inc., 26 N.J. Super. 550 (Cty. Ct. 1953).
In the present case the deputy director relied upon Scaglione v. St. Paul-Mercury Indemnity Co., 46 N.J. Super. 363 (App. Div. 1957); 26 N.J. 225 (1958); 28 *198 N.J. 88 (1958) as authority for the right to take jurisdiction and enter the judgment now under review. A study of the case indicates it is not authority for such a holding.
The judgment is therefore reversed. An appropriate order may be submitted.