74 N.J. Super. 343 (1962)
181 A.2d 380
IRA S. JOHNSON, PLAINTIFF-RESPONDENT,
v.
THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, A CORPORATION OF THE STATE OF NEW YORK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 1962.
Decided May 21, 1962.
*344 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. John A. Ackerman argued the cause for appellant (Mr. Ackerman and Mr. Bertram M. Light, Jr., of counsel; Messrs. Toner, Crowley, Woelper & Vanderbilt, attorneys).
Mr. Robert K. Bell argued the cause for respondent.
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendant insurance company appeals from a judgment in plaintiff's favor in the sum of $4,259.32, besides interest from February 8, 1960 and costs, granted by the Superior Court, Law Division, sitting without a jury. Suit had been based on two insurance policies issued by the defendant, insuring plaintiff against *345 loss resulting from injury or sickness, subject to the exceptions, limitations and provisions of each policy.
Plaintiff was injured on November 16, 1959, while the policies were in effect. He fell while he was attempting to get from a ladder to a scaffolding which he had erected against the outside wall of a house located at 905-907 Brighton Place, Ocean City, New Jersey. Plaintiff had erected the scaffold and had attempted to get on it for the purpose of examining the eave, extending out from the side of the building at a point between the first and second stories of this two-story dwelling, to determine whether it should be repaired. One of the outriggers broke, causing plaintiff to fall to the pavement with consequent injury.
Plaintiff's losses under the terms of the policies, consisting of his hospital, nursing, medical and other miscellaneous expenses, were stipulated at the trial. After making allowance for a $500 deductible provision, the net loss was fixed at $4,259.32, the amount for which judgment was entered.
The building where the accident occurred was owned by the Brighton Apartment Company, a New Jersey corporation, incorporated in 1936. On the date of the accident plaintiff was president and treasurer of this corporation and was owner of record of 449 shares, out of 550 shares issued and outstanding. His wife, Emma Johnson, held 100 shares and was secretary. A Mrs. Campbell held one share and was listed as vice-president. These three officers constituted the board of directors. Brighton Apartment Company owned three two-family houses and two boardwalk properties with stores, all of which were leased for use during the summer months only. It also had some stock investments. Plaintiff handled the leasing of the buildings to the summer occupants, took care of the maintenance of the outside of the various places, and hired painters, carpenters and others when painting and repairs to the buildings were needed. He effected transfer of securities owned by the corporation and the transfer of its real estate. *346 He and his wife took care of any complaints. She collected rents and arranged for the care of the inside of the houses.
Plaintiff never received any salary from the corporation, or any promise of salary in futuro, for services rendered by him for the corporation or on its behalf. Brighton Apartment Company never paid a salary to any of its officers. It never paid a dividend. When plaintiff's mother died in 1949, a mortgage held by her on the corporation's property was inherited by plaintiff and the corporation never paid any interest on or any part of the principal of that mortgage. The net worth of the corporation did increase, thus enhancing the value of plaintiff's shares in the enterprise. Plaintiff conducted an insurance business from his home and operated with his son a confection business on the boardwalk in Ocean City.
The defendant insurance company contended in the Law Division, as it does here, that it is not liable to plaintiff because of the following express exclusionary provisions in the policies. Hospital, Nurse, Medical and Surgical Policy No. 120315, insuring plaintiff, provides in Part II under "Exclusions":
"This policy does not cover any loss caused by or resulting from (1) injury or sickness for which compensation is payable under any Workmen's Compensation or Occupational Disease Law * * *."
Premier Expense Hospital Policy No. 33561, also insuring plaintiff, contains in Part IV thereof, under "Exclusions" this provision:
"This policy does not cover any loss caused or contributed by (1) injury or sickness for which compensation is payable under any Workmen's Compensation or Occupational Disease Act or Law; * * *."
In brief, defendant argues that plaintiff was an employee of the Brighton Apartment Company within the meaning of our Workmen's Compensation Act, N.J.S.A. 34:15-36, at the time of his accident and injury, entitling him to *347 workmen's compensation for the injury and thereby rendering him ineligible for the benefits of the policies under the above exclusionary provisions. Plaintiff contends that he was not an employee entitled to such compensation. That is the narrow issue submitted to us for determination.
Prior to and in effect on the date of this accident, a Standard Workmen's Compensation and Employer's Liability Policy No. WC XXX-XXXXX had been procured from the American Surety Company of New York. The name and address of the insured as appears in that policy is: "BRIGHTON APARTMENT CO., INC. and/or IRA SCOTT JOHNSON 851 Plaza Place, Ocean City, New Jersey." We have been advised that plaintiff filed a petition with the Workmen's Compensation Division subsequent to the trial of this cause, but without prejudice to his rights herein. We presume that this action was taken as a precautionary measure, in the event of an adverse decision, because of the two-year statute of limitations in workmen's compensation cases. R.S. 34:15-41 and 34:15-51.
N.J.S.A. 34:15-36 gives this definition of "employee":
"* * * `employee' is synonymous with servant, and includes all natural persons, including officers of corporations, who perform service for an employer for financial consideration, * * *." (Emphasis added)
Prior to the 1956 amendment of this definition (L. 1956, c. 160, sec. 1, effective November 28, 1956), the italicized words did not appear. However, both before and after the 1956 change, officers of corporations could qualify as "employees" of the corporation and obtain the benefits of the Workmen's Compensation Law. Adam Black & Sons, Inc. v. Court of Common Pleas, 8 N.J. Misc. 442, 152 A. 672 (Sup. Ct. 1930); Strang v. Strang Electric Co., 8 N.J. Misc. 873, 152 A. 242 (Sup. Ct. 1930); Hannaford v. Central R. Co. of New Jersey, 115 N.J.L. 573, 576 (Sup. Ct. 1935), affirmed 116 N.J.L. 412 (E. & A. 1936); Goldmann v. Johanna Farms, Inc., 26 N.J. Super. 550 (Cty. Ct. 1953); Mahoney v. Nitroform Co., Inc., *348 20 N.J. 499, 504 (1956); Howard v. Harwood's Restaurant Co., 25 N.J. 72, 79 (1957).
The mere ability of an officer of a corporation to be an employee of that corporation, whether before the statutory change or after, does not automatically make an officer an "employee" within the intendment of the Workmen's Compensation Law simply because he performs some service for or in the interest of the corporation. Our statutory definition requires that services must be performed "for financial consideration." In every case to which both counsel have referred us in their briefs, in which an officer was deemed to be an "employee" under our compensation law, the officer was actually paid a stipulated salary by the corporation or there was an express agreement promising to pay him in futuro for the services to be rendered. In none of the cited cases has the mere enhancement of corporate net worth and the consequent increase in the value of the officer's stock holdings, or the payment of dividends to the officer in common with all other stockholders, been held to be a sufficient "financial consideration" for the officer's efforts on behalf of the corporation to satisfy the statutory definition of "employee." N.J.S.A. 34:15-36.
In the Black, Strang, Hannaford, and Goldmann cases, supra, the corporate officer received a stipulated salary for his services as an employee of the corporation. In the Mahoney case, the Supreme Court found that although the officers, who sustained the fatal injuries, had not actually drawn any money from the company as salary, "the circumstances were such as to exhibit a reasonable and proper expectation on the part of Mahoney and Kraemer [the deceased officers] that the corporation would compensate them for their work before any monies would be distributed to the stockholders as such." (20 N.J., at p. 507.) In answer to the argument that such payment might never happen, the Supreme Court said, "the possibility that the condition may happen involves a chance of detriment which is sufficient to make the promise valid consideration." Ibid.
*349 In the Howard case, supra, the Supreme Court also found in the record evidence that there was an "understanding" between the petitioner and the respondent corporation, when she came to work for the respondent, that she was to receive a salary of $50 per week, and although no salary was ever actually paid to her pursuant to that understanding, under a subsequent arrangement prior to the happening of her accident the corporation had issued to her its demand promissory note in the amount of $650, representing 13 weeks' salary at $50 per week.
If mere increase in the value of the officer's shares of stock had been regarded as a sufficient financial consideration to constitute him an employee under the Workmen's Compensation Law, it would not have been necessary for the Supreme Court in the Mahoney and Howard cases to have taken the pains to find in the record an agreement between the corporation and the injured officer for the payment of compensation for his or her services in behalf of the corporation, for in each of these cases the injured officer was also a director and stockholder. In fact, in the Mahoney case the deceased officers, Mahoney and Kraemer, each owned a 25% stock interest in the corporation.
"The compensation decisions uniformly exclude from the definition of `employee' those who neither receive nor expect to receive any kind of payment for their services. 1 Larson, Workmen's Compensation Law (1952) § 47.41, p. 696." Cerniglia v. City of Passaic, 50 N.J. Super. 201, 208 (App. Div. 1958).
In Armitage v. Trustees of Mt. Fern M.E. Church, 33 N.J. Super. 367 (Cty. Ct. 1954), it was held that one rendering a service in the construction of a church as a volunteer without any expectation of consideration in return, is not an employee within the meaning of the Workmen's Compensation Law.
The defendant argues that the provisions in N.J.S.A. 34:15-36, that the services must be performed for "financial *350 consideration," does not require that the consideration must be in the form of a wage. We agree. See Simpson v. Vertty, 3 N.J. Misc. 9 (Dept. Labor 1925), in which the injured employee received for his services board and lodging and $20 a month; Britten v. Berger, 18 N.J. Misc. 215, 12 A.2d 875 (Dept. Labor 1940), in which the injured superintendent of an apartment house received no wages for his services, but under a written agreement was assigned an apartment rent-free therefor, which the compensation court computed as having a value of $25 monthly; Wadge v. Crestwood Acres, Inc., 20 N.J. Misc. 188, 192, 26 A.2d 279, 282 (Cty. Ct. 1942), in which the injured employee was to receive an agreed price for the entire work and the court noted that "to constitute a master and servant relation it is not necessary to have any particular method of payment." However, in each of these cases there was an agreement to pay for the services rendered, and it so happened that in each of these cases the method of payment was indicated.
We recognize that even where no specific salary or manner of payment is fixed, the law in a proper case may spell out an agreement implied in fact to pay for the reasonable value of the services rendered. We do not find such facts in the instant case. "Employment ordinarily presupposes a contractual relation." Bendler v. Bendler, 3 N.J. 161 (1949). One can hardly be a party to a contract against his will and without ever having any intention to enter into a contractual relationship. The circumstances here demonstrate that the plaintiff not only did not expect pay for his services, but did not want it, and had never received any pay, even though the corporation had been in existence for 24 years prior to his accident.
In Le-Co Gin Company v. Stratton, 241 Miss. 623, 131 So.2d 450, 454 (Miss. Sup. Ct. 1961), the court ruled that for one to be an employee "his services must be recompensed under a contract of hire, express or implied, and advantages received by an executive officer flowing from *351 capital investment does not constitute wages within the meaning of the Act." The actions of the plaintiff and those of the corporate entity in the instant case, evidentiary of their subjective intent, negate any contention of a contract of hire, express or implied. We conclude that the services performed by the plaintiff in the interest of Brighton Apartment Company, in which he was an owner of almost 82% of the stock, were not performed for a financial consideration within the definition of N.J.S.A. 34:15-36 and, for that reason, plaintiff was not an employee of that corporation at the time of his accident within the meaning of the Workmen's Compensation Act.
The trial court based its conclusion, that plaintiff was not an employee, rather on the ground that "the preponderance of the ownership made him for all practical purposes the alter ego of the corporation. To adopt a realistic rather than technical attitude toward the Workmen's Compensation Act, the corporate entity should be disregarded." We find it unnecessary and inappropriate in this case to pierce the corporate veil and to totally disregard the separate corporate entity. After all, plaintiff had overtly carried on his business activities as a corporation since 1936 and had steadfastly observed all of the niceties of corporate form with regard to federal income tax returns, annual reports to the State, a properly constituted board of three directors, corporate officers acting under duly adopted authorizing resolutions, bylaws and the other corporate amenities. Even though he owned 449 of the 550 shares, with 100 more shares in the name of his wife and with only one qualifying share in the third director, he should not be heard to say now that this business was not a corporate enterprise, a separate legal entity.
As stated in Goldmann v. Johanna Farms, Inc., supra (26 N.J. Super., at p. 558):
"It is fundamental that, no matter how shares of stock are held, the corporation itself is an entity wholly separate and distinct from *352 the individuals who compose and control it. National Newark, etc., Co. v. Work, 109 N.J. Eq. 468 (Ch. 1932); Schmid v. First Camden National Bank, etc., Co., 130 N.J. Eq. 254 (Ch. 1941). And this general rule applies even though all of the stock of the corporation is owned by one person. White v. Evans, 117 N.J. Eq. 1 (E. & A. 1934); Hackensack Trust Co. v. City of Hackensack, 116 N.J.L. 343 (Sup. Ct. 1936)."
But even if we observe the separate entity concept in this case, we may not ignore the realities in resolving the ultimate issue as to whether an employer-employee relationship existed.
One of the criteria for determining that question is whether the alleged employer had the right to control the activities of the alleged employee. As aptly stated in Gross v. Pellicane, 65 N.J. Super. 386, 391 (Cty. Ct. 1961):
"it is well settled that basic to the existence of an employer-employee relationship is the employer's right to control the details of the employee's work, i.e., not what shall be done, but how it shall be done, and the right to discharge him. Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261, 264 (1953); Condon v. Smith, 37 N.J. Super. 320 (App. Div. 1955), affirmed per curiam, 20 N.J. 557 (1956)."
In Mahoney, supra, the Supreme Court observed that in that case "the element of control essential to the employment relation is not absent here. The decedents did not have it in their power, alone or in combination, to overrule their fellow stockholders. Rather, each was in a position where the other three could combine to exercise control over him through corporate action." 20 N.J., at p. 506. Such an observation could not be made in the instant situation. Plaintiff's dominant position in the corporation, even alone, and a fortiori in combination with his wife, compels the conclusion that he controlled the corporation and the latter could not exercise any real control over him. Brighton Apartment Company could not effectively discharge plaintiff or realistically terminate the services performed by him, as the customary employer could fire an *353 unwanted employee. The right to hire and fire is inherent in the employment relationship. Armitage v. Trustees of Mt. Fern M.E. Church, supra, 33 N.J. Super., at p. 370.
In 1 Larson, Workmen's Compensation Law, § 54.21, pp. 788-789, the author states:
"* * * the work, to qualify as employment, should be done under the control of someone. If the officer is himself the ultimate wielder of control, it is difficult to see how even his performance of menial work could be termed employment. Again, although there is authority to the contrary, an officer and stockholder who is so completely in control of a corporation that he takes his compensation not as wages or salary, but as a drawing account upon its earnings as he pleases, seems, no matter what his duties, to be working not as a workman under a contract of hire but as an entrepreneur."
Where "authority to the contrary" has regarded a corporate officer with a majority stock interest as an employee, the record has disclosed a definite contract of hire with a fixed salary. Compare Milwaukee Toy Co. v. Industrial Commission, 203 Wis. 493, 234 N.W. 748 (Sup. Ct. 1931), with Alperin v. Eagle Indemnity Co., 169 Tenn. 215, 84 S.W.2d 100 (Tenn. Sup. Ct. 1935). See, too, Cohen v. Best Made Manufacturing Co., 169 A.2d 10 (R.I. Sup. Ct. 1961), holding that the sole stockholder of the corporation and its manager at a salary of $300 a week was not an employee under the workmen's compensation act, because there was "no one to control petitioner's actions."
Where, as here, no one, other than plaintiff himself, could really control his actions in behalf of his own corporation, and no attempt was ever made over a 24-year period to classify him as an employee or to fix any compensation for his services, it would be violative of common sense and good law to hold that he was an employee of Brighton Apartment Company at the time in issue.
The judgment is affirmed.